UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
SECURITIES AND EXCHANGE
COMMISSION                        :
 Plaintiff,                       :
                                  :
   v.                             :  Civil No.:13-CV-1047(AVC)
                                  :
CHAD C. McGINNIS and SERGEY       :
PUGACH                            :
 Defendants,                      :
                                  :
BELLA PUGACH,                     :
   Relief Defendant.              :
```

**RULING ON THE DEFENDANT MCGINNIS'S MOTION TO DISMISS
OR, ALTERNATIVELY, REQUEST FOR TRANSFER OF VENUE**

This is an action for equitable relief filed pursuant to

Section 21(d) of the Securities Exchange Act of 1934

(hereinafter the "Exchange Act") in which the Securities and

Exchange Commission (hereinafter the "SEC") seeks disgorgement

of all ill-gotten gains, prejudgment interest, and civil

penalties pursuant to Section 21A of the Exchange Act. The SEC

asserts that the defendants, Chad C. McGinnis and Sergey Pugach,

executed an insider-trading scheme using Green Mountain Coffee

Roasters, Inc.'s (hereinafter "GMCR") nonpublic information

ahead of earnings announcements.[1] On July 24, 2013, this court

granted an *ex parte* emergency temporary restraining order filed

---

[1]Additionally, trades were made ahead of an earnings announcement
in a trading account of the relief defendant, Bella Pugach,
Sergey Pugach's mother.

1

by the SEC which: (1) enjoined defendants Chad McGinnis and Sergey Pugach from violations of federal securities laws; (2) froze funds and other assets of the defendants and relief defendant Bella Pugach; (3) provided for expedited discovery; (4) provided for alternative service by the Commission; (5) prohibited the destruction or alteration of documents; and (6) set the matter for a preliminary injunction hearing.

After the parties joint motions for extension of the hearing date, on October 29-31, 2013, the court held the preliminary injunction hearing and heard testimony as well as arguments of counsel. On October 2, 2013, prior to the hearing, McGinnis filed the within motion to dismiss for lack of venue pursuant to Fed. R. Civ. P. 12 (b) (3), or, alternatively, a motion seeking transfer of venue to the District of Vermont. The issues are 1) whether venue is proper in this court and 2) whether there are factors that weigh heavily in favor of transferring this case to the District of Vermont.

For the reasons that follow, the defendant's motion to dismiss for lack of venue is DENIED and the defendant's motion to transfer venue is GRANTED.

## FACTS

The complaint alleges the following facts:

McGinnis lives in Morrisville, VT; Pugach lives in Hamden, CT; Ms. Pugach lives in Brooklyn, NY; and GMCR is a Delaware corporation with its headquarters in Waterbury, VT.

Venue lies in this court because "[c]ertain of the acts, practices and transactions and courses of business alleged in this Complaint occurred within the District of Connecticut and elsewhere, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange. During the time of the conduct at issue, shares of GMCR were traded on the NASDAQ stock market."

The complaint alleges that by virtue of his position at GMCR, McGinnis was provided access to nonpublic information about GMCR's upcoming earnings announcement days before the information was released to the public. The complaint further alleges that "[p]hone records obtained by the Commission indicate that McGinnis and Pugach communicated via phone call or text message 116 times between January 24, 2010 and March 1, 2013."

After McGinnis filed the within motion, Pugach filed an opposition to the motion to transfer to the District of Vermont. Counsel for GMCR submitted a declaration stating that GMCR and

the GMCR witnesses oppose the transfer and do not consider travel to Connecticut to be a substantial burden.

At the preliminary injunction hearing, testimony confirmed that McGinnis is a resident of Vermont and was an employee of GMCR when he was alleged to have accessed and possessed material, non-public information, and subsequently trade based on this information, all while in Vermont. Testimony also revealed that McGinnis and Pugach communicated often during the time period of alleged insider trading. Pugach testified that on several occasions, he traveled to McGinnis's house in Vermont, ahead of GMCR earnings announcements and placed trades in GMCR stock while there. Pugach also testified that he communicated with McGinnis and placed trades in GMCR stock while in Connecticut

**STANDARD**

For a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum is proper falls on the plaintiff. Indymac Mortgage Holdings, Inc. v. Reyad, 167 F. Supp.2d 222, 237 (D. Conn. 2001). If the court relies only on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of venue. See Gulf Ins. Co. v. Glasbrenner*,* 417 F.3d 353, 355 (2d Cir.2005). Thus, if an evidentiary hearing on the question of venue has not been held,

4

the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in [the plaintiff's] favor. Zaltz v. JDATE, 2013 WL 3369073 at *2 (E.D.N.Y. July 8, 2013. The court is permitted, however, to consider facts outside of the pleadings on a rule 12(b)(3) motion. Id. "[T]he typical venue provision, 28 U.S.C. § 1391, is preempted by the provisions set forth in the Exchange Act at 15 U.S.C. § 78aa [,78u(d), and 78u-1]. Under these provisions, venue is proper in a district where either (1) the defendant is found, is an inhabitant, or transacts business; or (2) any act or transaction constituting the violation occurred." RMS Titanic, Inc. v. Geller, 2000 WL 306997 at *1 (D. Conn. Jan. 10, 2000).

A district court may *transfer* venue pursuant to Title 28 of the United States Code, Section 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." The determination of the propriety of a transfer under 28 U.S.C. § 1404(a) requires an "individualized, case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612, 622 (1964). The district court should consider factors affecting the interest of justice. Miller v. Meadowlands Inc., 822 F. Supp. 61 (D. Conn. 1993).

5

## DISCUSSION

### I.   IMPROPER VENUE

Mr. McGinnis argues that "[v]enue is an individual right specific to each defendant" and "the Complaint fails to conduct any venue analysis for Mr. McGinnis and thus fails to demonstrate that venue is proper for him in the Court under 15 U.S.C. § 78aa." Specifically, the defendant argues that "[b]y the SEC's own allegations, all of the alleged conduct that violated the federal securities laws took place in the District of Vermont" and that "[i]t is beyond dispute that Mr. McGinnis lived in Vermont and worked at GMCR's headquarters in Waterbury, Vermont." McGinnis argues that "[t]he Complaint does not identify any specific act or transaction constituting a violation of the securities laws that Mr. McGinnis committed in the District of Connecticut . . . because no such acts exist. The allegations in the Complaint, and the testimony of both Messrs. McGinnis and Pugach, make clear that all of the important steps in the alleged insider trading scheme took place in Vermont."

The SEC responds that, "[a]s an initial matter, Mr. McGinnis, by his conduct prior to filing this motion, has waived any objection to venue and his motion to dismiss should be denied on that basis. Specifically, the SEC argues that "[f]or

two months Mr. McGinnis litigated this matter in Connecticut and, indeed, sought relief from this court without complaint about venue." The SEC argues that "the Complaint and the declarations submitted opposing this motion establish that Mr. McGinnis made communications into the District of Connecticut in furtherance of the alleged insider trading scheme and that the scheme resulted in trades, which the Commission contends were illegal, being made from [the District of Connecticut]."

In analyzing whether a plaintiff has made a *prima facie* showing of venue, a court should view all the facts in a light most favorable to the plaintiff. Horvath v. Banco Commercial Portugues, S.A., 2012 WL 497276 at *1 (2d Cir. 2012); Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir.2007). Under the Exchange act, venue is proper in any district where any transaction constituting the violation occurred. 15 U.S.C. § 78aa. "Provisions of the Securities and Exchange Act are to be interpreted flexibly 'to effectuate its remedial purpose.'" S.E.C. v. Roor, 1999 WL 553823 at *2 (S.D.N.Y. July 29, 1999) (quoting Affiliated Ute Citizens v. U.S., 406 U.S. 128, 151 (1972)).

McGinnis argues that all of the important steps in the alleged insider trading scheme took place in Vermont. However, even if not alleging each specific instance, the complaint

alleges McGinnis passed illegally-obtained information from Vermont to Pugach in Connecticut and participated in an illegal trading scheme that resulted in trades being made in Connecticut. Pugach admits that he communicated with McGinnis while in Connecticut and placed trades that are alleged to be a part of the illegal scheme while in Connecticut.

Taking into account this affidavit, and viewing the complaint in favor of the plaintiff, Connecticut did play a role with alleged communications and trading by Pugach in the days immediately preceding GMCR's earnings announcements, and as such, venue is proper in this court. While these facts occurring in Connecticut were not critical and operative, they were nonetheless important in that they augment the scale of the alleged scheme. Accordingly, McGinnis's motion to dismiss for lack of venue is DENIED.

## II. <u>TRANSFER TO VERMONT</u>

### A. <u>VERMONT JURISDICTION AND VENUE</u>

McGinnis argues that "[t]he factors this Court must consider in its analysis of this motion militate strongly in favor of transferring this case to the district of Vermont." Specifically, McGinnis argues that "[g]iven that all the GMCR witnesses who will testify in this action reside and work in Vermont, and Vermont was the location of the operative facts

relevant to the Complaint's allegations, this Court should transfer this action to the District of Vermont."

The SEC responds that "Mr. McGinnis identifies no substantial reason to transfer this matter from this Court to the District of Vermont other than his own convenience and preference." Specifically, the SEC argues it will not be a substantial hardship for GMCR witnesses to appear in Connecticut, as McGinnis asserts, because "we now know that the GMCR witnesses prefer this matter stay in Connecticut, based on the declaration of GMCR counsel Sonia Cudd." Further, the SEC states that "we also know that Defendant Sergey Pugach opposes Mr. McGinnis's motion to transfer."

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . ." 28 U.S.C. § 1404(a).[2] "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case

---

[2] This action could have been brought in Vermont. Subject matter jurisdiction is satisfied, as all federal district courts have subject matter jurisdiction to hear an action that arises out of the Exchange Act. See 15 U.S.C. § 78u(e). Personal jurisdiction is satisfied, as McGinnis and Pugach both reside within the territorial United States and have been served with a summons and complaint. Venue is satisfied, as McGinnis resides in Vermont, and is alleged to have accessed and possessed material, non-public information while in Vermont; and both McGinnis and Pugach are alleged to have traded while in Vermont based upon this information.

basis." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006)(citing In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir.1992)). While non-exhaustive, some of the factors a district court is to consider are "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp.2d 341, 343 (S.D.N.Y.2002).

  1. The Plaintiff's Choice of Forum

  With respect to the first factor, the SEC argues that the Exchange Act's venue provision gives wide latitude to the plaintiff's choice of forum "which will not be disturbed unless the movant shows that the balance of convenience and justice weighs heavily in favor of transfer." RMS Titanic, Inc. v. Geller 2000 WL 306997, at *7 (D. Conn 2000).

  McGinnis responds that "the law is well settled that the SEC's choice of forum should be granted little deference because Connecticut bears no meaningful connection to the locus of operative facts in this action.

District courts give significant weight to the plaintiff's choice of forum. Here, the SEC's choice of forum is with this court. However, as explained below, although Connecticut does play a role in this action, the role is not a meaningful connection to the operative facts.

2. The Convenience of Witnesses

McGinnis argues "[t]he single most important factor in a Section 1404(a) motion to transfer, the convenience of witnesses, weighs heavily in Mr. McGinnis' favor." McGinnis argues that the trial "will impose a substantial hardship on multiple GMCR witnesses . . . "[g]iven that all of the GMCR witnesses who will testify in this action reside and work in Vermont, and Vermont was the location of the operative facts relevant to the Complaint's allegations . . .."

The SEC responds that the number of GMCR witnesses that will be required to testify is overstated by McGinnis and, further, counsel for GMCR states that GMCR and its employees prefer that this action remain in Connecticut and GMCR does not consider having its employees appear at trial in Connecticut to be a substantial hardship.

In a reply brief, McGinnis responds that "[t]his factor compels transfer notwithstanding GMCR's curious affidavit in which it asserts that its employees will not be inconvenienced

if this action remains in the District of Connecticut. The SEC's desperate solicitation of this affidavit is a naked attempt to counter the reality that a primary factor in the Court's transfer analysis augurs in favor of transfer."

Regardless of GMCR's counsel's representation to the court that Connecticut would not be a hardship, Vermont forum would be more convenient for the potential witnesses living and working in Vermont.

   3. The Location of Relevant Documents and Sources of Proof

McGinnis argues that "all the documents at issue, computer servers, and other sources of proof are located in the District of Vermont."

The SEC responds that "[w]hile some documents are located in Vermont, other evidence is located in other jurisdictions, including Connecticut." While stating the District of Connecticut creates an "incrementally greater burden" than Vermont, McGinnis does concede that modern technology has facilitated easier document transfer.

Even if documents are located elsewhere throughout the United States, it is likely that most documents and other sources of proof would come from Vermont.

4. <u>The Convenience of Parties</u>

As to the parties, McGinnis states that Vermont will be a more convenient forum for him.

The SEC, represented by counsel based in Denver, Colorado, state that "travel from Denver to Hartford is more convenient than travel from Denver to Burlington, Vermont, as there are direct flights from Denver to Hartford." Pugach stated in his memorandum in opposition to the motion to transfer that Connecticut is more convenient for him.

Presumably, Connecticut would also be more convenient for Ms. Pugach, the relief defendant, residing in New York City.

5. <u>The Locus of Operative Facts</u>

McGinnis argues that his "alleged possession of material, non-public information and his trading of GMCR securities occurred in the District of Vermont," and as such "none of the critical events in this action occurred in the District of Connecticut."

The SEC responds "that Mr. McGinnis communicated regarding GMCR into the District of Connecticut and Pugach conducted trades that are subject to this litigation from the District of Connecticut."

While some events did occur in Connecticut, most of the critical events from which the claim arises occurred in Vermont.

Pugach, the tippee in this action, is alleged to have placed some trades and to have received some material, non-public information while he was in Connecticut. These, however, are minor supplementary facts, in the shadow of the critical events: McGinnis is alleged to have possessed material, non-public information in Vermont. This information is alleged to been misappropriated from a corporation with its headquarters in Vermont. All of McGinnis's trades based on this information, and the forwarding of the information to Pugach, are alleged to have occurred from Vermont. Many of Pugach's trades based on this information, and much of the communication he is alleged to have received leading up to earnings announcements, are alleged to have occurred while he was at McGinnis's house in Vermont.

6. <u>The Availability of Process to Compel Witnesses</u>

McGinnis argues "[t]he availability of process to compel unwilling witnesses to attend and testify in court is a neutral factor in this action because both the Commission and Mr. McGinnis can compel unwilling witnesses to testify in this Court." The SEC responds that "it actually weighs against transfer as it provides no basis to move the action to the District of Vermont."

7. <u>Means of the Parties</u>

McGinnis argues he "is currently facing serious financial difficulty because the SEC obtained an Asset Freeze Order freezing his assets . . . The SEC, on the other hand, is a well-funded federal agency that will not experience any financial hardship in litigating this action in the District of Vermont."

The SEC responds that "given the modest distance between the District of Connecticut and the District of Vermont, and the resulting limited increased costs for Mr. McGinnis to litigate in Connecticut, there can be no real claim that the location of the trial will affect the 'interests of justice.'"

The SEC has the means to conduct litigation wherever it may occur. As to McGinnis, although now restrained by a less burdensome asset freeze, he is still under serious financial constraint, especially when compared to the financial power of the SEC.  However, McGinnis and Pugach face the same financial difficulty, and as such, transferring this case to Vermont would present a similar burden on Pugach's financial means.

8. <u>Interests of Justice</u>

Finally, the court considers other relevant factors including trial efficiency and the interest of justice. <u>Hanninen v. Fedoravitch</u>, 583 F. Supp.2d 322, 331 (D. Conn. 2008). McGinnis argues "there is no question that the District of Vermont has a

greater interest in the determination of whether a Vermont resident misappropriated material, nonpublic information of a Vermont corporation while working in Vermont and then traded the information in Vermont." Specifically, McGinnis argues "[t]he District of Connecticut has little interest in this Vermont centric controversy, other than that one of its residents was also sued by the SEC for making trades while in Vermont."

The SEC responds that this action substantially affects Connecticut. Furthermore, the SEC states that "[i]f this case is transferred to the District of Vermont, a new judge will be obliged to educate him or herself regarding the facts of the cases and issues herein." The SEC argues that "[t]his case is being actively litigated and transfer could delay resolution of the pending motion for preliminary injunction as well as otherwise delay progress of the case."

In a reply brief, McGinnis argues that the SEC's argument about a judge needing to educate him or herself on the matter is baseless. Specifically, McGinnis argues that "[e]very transfer of an action necessitates that a new judge become familiar with the facts of the case and issues therein."

Considering all of the aforementioned factors the court concludes that the balance of conveniences and exceptional circumstances warrant transferring this action to Vermont.

Although not a hardship for many of the potential witnesses, Vermont would be a more convenient forum. More importantly, a significant amount of the events giving rise to this cause of action did not occur in Connecticut. The District of Connecticut played a minor role in the facts of the case, while the critical and operative facts at play here occurred in Vermont.

**CONCLUSION**

For the foregoing reasons, McGinnis's motion to dismiss action for lack of venue or, alternatively, to transfer venue to the district of Vermont (document no. 49) is GRANTED in part and DENIED in part. The court denies the motion to dismiss but grants McGinnis's request for change of venue to the District of Vermont.

It is so ordered this eleventh day of December, 2013, at Hartford, Connecticut.

/s/
Alfred V. Covello,
United States District Judge