U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 APR -3 PM 12: 36

CLERK

BY_____
   DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

SECURITIES & EXCHANGE )
COMMISSION, )
 )
Plaintiff, )
 )
v. ) Case No. 5:14-cv-00006
 )
CHAD C. McGINNIS, )
SERGEY PUGACH, and )
JANUSZ SUCHOWIEJKO, )
 )
Defendants, and )
 )
BELLA PUGACH, )
 )
Relief Defendant. )

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO STRIKE THE JULY 3, 2017 SUPPLEMENTAL EXPERT REPORT OF DANIEL L. REGARD II**
(Doc. 421)

Plaintiff Securities & Exchange Commission (the "SEC") brings this action pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("the Act") and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b), and Section 17(a) of the Act, 15 U.S.C. § 77q(a), against Defendants Chad C. McGinnis, Sergey Pugach, and Janusz Suchowiejko (collectively, the "Defendants").

Pending before the court is Defendants' motion to strike the July 3, 2017 supplemental expert report of Daniel L. Regard II (the "Supplemental Expert Report"), filed on January 4, 2018. (Doc. 421.) The SEC opposed the motion, filing its response on February 5, 2018. Defendants replied on February 15, 2018, at which point the court took the matter under advisement.

The SEC is represented by Dugan Bliss, Esq., Gregory A. Kasper, Esq., and James A. Scoggins, Esq. Defendant McGinnis is represented by Evan I. Cohen, Esq., Kevin M.

Henry, Esq., and Michael Q. English, Esq. Defendant Pugach is represented by Christopher L. LaVigne, Esq., Craig S. Nolan, Esq., and Kevin L. McRoskey, Esq. Defendant Suchowiejko is represented by Maryanne E. Kampmann, Esq.

## I. Factual and Procedural Background.

This lawsuit concerns the SEC's allegation that Defendants violated the securities laws by engaging in insider trading related to Keurig Green Mountain ("KGM") stock. On July 2, 2014, the court issued its first Scheduling Order, providing that: (i) the SEC submit expert reports by November 17, 2014; (ii) the SEC's experts be deposed by December 15, 2014; (iii) the Defendants submit their expert reports by December 30, 2014; and (iv) the Defendants' experts be deposed by January 30, 2015. Pursuant to the Scheduling Order, on November 17, 2014, the SEC proffered Mr. Regard's initial expert report (the "First Report").

As Managing Director of Intelligent Discovery Solutions, Inc., Mr. Regard is an electronic technology specialist with more than twenty years of experience providing expert analysis on issues including electronic discovery, computer forensics, database development, and application software and data analysis. His First Report was based on his evaluation of the forensic images of four computers that KGM produced to the parties in 2013 using two forensic tools, EnCase and X-Ways, to conduct his analysis.[1] The First Report purportedly demonstrated that, in 2013, Defendant McGinnis, then an employee of KGM, repeatedly used his KGM login credentials to access KGM's material non-public information ("MNPI"). It further allegedly revealed: that Defendant McGinnis repeatedly accessed the home page of the KGM Sales Portal where KGM stored certain MNPI; that, on two specific occasions, Defendant McGinnis viewed other charts on the Sales Portal home page, tracking sales of specific product lines at KGM, including the K-Cup; and that Defendant McGinnis viewed material on the Sales Portal hours before making trades prior to KGM's May 8, 2013 earnings announcement. In December 2015, Defendants deposed Mr. Regard as to the contents of the First Report.

---

[1] The four computers are identified as (1) GMCR 36152, (2) CHADMTC, (3) CHADMCLT, and (4) GMCR-MacBook-Pro.

2

In January and February of 2015, Defendants filed motions for summary judgment. On January 21, 2015, the court granted a stay of discovery until after the court ruled on Defendants' motions. During the pendency of these summary judgment motions, Defendant McGinnis met and conferred with KGM regarding KGM's response to subpoena requests that Defendant McGinnis had previously served. When negotiations broke down, on July 8, 2015, Defendant McGinnis filed a motion to compel KGM to permit the inspection of KGM's active server containing its H: drive and all backup tapes of the server containing the H: drive for the periods prior to and following each earnings announcement identified by the SEC in its First Amended Complaint. Defendant McGinnis believed that these materials were relevant to the SEC's claims regarding his alleged access to MNPI and to the conclusions set forth in Mr. Regard's First Report. The parties agreed to a series of extensions in responding to the motion to compel while attempting to reach an agreement on the scope of KGM's production.

On September 23, 2015, during the parties' negotiations, the court denied Defendants' motions for summary judgment. This, in turn, lifted the stay on discovery. According to the first Scheduling Order, Defendants were required to submit their expert reports within thirty days of the court's summary judgment Order. On October 2, 2015, Defendant McGinnis reached an agreement with KGM whereby he would withdraw his motion to compel without prejudice in exchange for KGM's production of certain materials. In order to address KGM's production, Defendant McGinnis moved to extend the deadline for the submission of Defendants' expert reports for an additional seventy-five days. In opposing the motion, the SEC argued that, if the court granted Defendants an extension of time, then it should also be afforded the opportunity to submit a supplemental expert report "to address this new information[]" provided by KGM. (Doc. 315 at 11.) On October 28, 2015, the court granted Defendant McGinnis's motion to amend the discovery schedule, extending the time for Defendants to serve their expert reports.

Before Defendants served their expert reports, on February 12, 2016, the court granted an emergency motion to stay discovery. On August 10, 2016, the court lifted the

stay and denied without prejudice Defendants' unopposed joint motion to extend the stay. The parties agreed that Defendants would serve their expert reports on January 9, 2017. Prior to this deadline, however, Defendants filed a joint motion to modify the Scheduling Order to further extend the time for Defendants to submit their expert reports, which the court granted on January 25, 2017.

On March 31, 2017, Defendants filed a motion to further modify the Scheduling Order, seeking to require the SEC to submit any supplemental expert reports which "would relate to materials that were produced by non-party [KGM] in the autumn of 2015, *i.e.*, after the SEC's experts submitted their initial expert reports and were deposed in December 2015." (Doc. 400 at 1-2.) The SEC partially opposed Defendants' motion to modify the Scheduling Order, arguing that it should not be required to disclose its supplemental expert reports at this stage of the case. In opposing Defendants' motion, the SEC did not disagree with Defendants' characterization that any supplemental expert report it submitted would address the KGM discovery. At an April 3, 2017 status conference, the SEC represented to the court that "[t]he question is really just the [KGM discovery] that was produced; is there going to be a supplemental report, and if so, . . . when it would be produced." (Doc. 404 at 7.) On May 19, 2017, the court granted in part and denied in part the SEC's motion to enter an amended discovery schedule. Pursuant to the court's Scheduling Order, the SEC was required to "submit any supplemental expert report(s) on July 3, 2017." (Doc. 414 at 6.)

After the court's ruling, the SEC sought and obtained additional funding for Mr. Regard so that he could determine whether a supplemental report concerning the KGM production was necessary and, if so, complete a supplemental report by July 3, 2017. On July 3, 2017, the SEC served Mr. Regard's Supplemental Expert Report. The Supplemental Expert Report is based on Mr. Regard's forensic evaluation of two of the computers he previously analyzed in the First Report. In the Supplemental Expert Report, Mr. Regard stated that "since [his] initial report on November 17, 2014, there have been major and minor improvements to the forensic tools [he] use[s][]" and that his "use of these tools and [his] understanding of various artifacts on various operating

4

systems have, accordingly, improved as well." (Doc. 421-7 at 4.) In May 2017, Mr. Regard "applied these newer tools in a supplemental analysis of [Defendant] McGinnis'[s] work-assigned laptop[.]" *Id.* In doing so, he allegedly "identified previously undetected evidence of [Defendant McGinnis's] use of the BATCHOPS user account, and previously undetected evidence of access to [MNPI] on that same work-assigned laptop, as well as access to likely [MNPI] on an unnamed work-assigned laptop that [Defendant McGinnis]" previously used. *Id.* This newly discovered evidence purportedly dates back further than the other forensic evidence previously found by Mr. Regard.

According to the SEC, this previously unknown evidence rendered the First Report incomplete, requiring a supplemental report. However, the Supplemental Expert Report does not address any of the 2015 KGM production. In an email to Defendants sent on August 21, 2017, counsel for the SEC clarified that "the evidence most recently produced by KGM did not necessitate [the] supplemental expert report[,]" but that "advances in forensic tools that have occurred during the pendency of this case[]" required Mr. Regard to supplement his First Report. (Doc. 421-9 at 2.)

Because the Supplemental Expert Report contained references to new evidence of Defendant McGinnis's alleged access to MNPI, Defendant McGinnis served a subpoena on KGM for documents and information related to the Supplemental Expert Report. KGM, however, refused to produce any documents in response to the subpoena on the basis that discovery in the case was closed.

Seeking to strike the Supplemental Expert Report, Defendants submitted a declaration from Thomas Kiernan, an Associate Director in the Cyber Security and Investigations practice at Berkeley Research Group. Mr. Kiernan concluded that Mr. Regard "could have performed the same analysis that led him to the 'previously undetected evidence' using forensic tools that existed at the time of the [First Report]." (Doc. 421-3 at 3, ¶ 5.) In his declaration, Mr. Kiernan identified several instances where the analysis contained in the Supplemental Expert Report could have been performed

5

when the First Report was prepared in 2014. In opposing the motion to strike, the SEC did not challenge or rebut Mr. Kiernan's conclusions.

On February 22, 2018, the court held a status conference. Thereafter, on March 14, 2018, the parties submitted a joint motion to modify the Scheduling Order, which the court granted on March 19, 2018. Pursuant to the Order, Defendants were required to submit expert witness reports on or before March 14, 2018 and must submit any expert report addressing the Supplemental Expert Report on or before May 2, 2018. The SEC must submit a rebuttal expert report, if any, by May 30, 2018. Depositions of all expert witnesses must be completed on or before July 13, 2018, at which point fact discovery in this case will be closed.

## II. Conclusions of Law and Analysis.

Defendants argue that the court should strike the Supplemental Expert Report because it does not satisfy Federal Rule of Civil Procedure 26(e)'s standard for supplementation of an expert report and is therefore untimely pursuant to the court's Scheduling Order. Defendants point out that the Supplemental Expert Report does not address the KGM discovery produced in 2015 and that Mr. Regard could have performed the same analysis that led him to the previously undetected evidence using forensic tools that existed when he produced the First Report in November 2014. The SEC responds that Mr. Regard properly supplemented his First Report because his additional analysis in May 2017 resulted in the discovery of previously undetected evidence, rendering his initial analysis incomplete.

Federal Rule of Civil Procedure 26(a) requires a party to disclose to the other parties the identity of any expert witness it may use at trial and to accompany that disclosure with a written report, which must contain "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 26(e) further provides that:

> A party who has made a disclosure under Rule 26(a)[] . . . must supplement or correct its disclosure or response[] . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not

6

> otherwise been made known to the other parties during the discovery process or in writing[.]

Fed. R. Civ. P. 26(e)(1)(A); *see also Levinson v. Westport Nat'l Bank*, 2013 WL 3280013, at *4 (D. Conn. June 27, 2013) ("[Rule] 26(e) does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect.") (quoting *Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 705 (W.D.N.Y. 2011) (internal quotation marks omitted)).

For an expert report disclosed pursuant to Rule 26(a)(2)(B), "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). "Unless the court orders otherwise, [pretrial] disclosures must be made at least 30 days before trial." Fed. R. Civ. P. 26(a)(3)(B).

A party's duty to "supplement its initial expert report does not arise when [a party] seeks to bolster its earlier submission, but rather, arises only if the expert *subsequently* learns of information that was previously unknown or unavailable[]" to the expert, thus rendering the "information previously provided in an initial report inaccurate or misleading because it was incomplete[.]" *Levinson*, 2013 WL 3280013, at *4 (internal quotation marks omitted); *see also Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) (noting that "experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions") (internal quotation marks omitted); *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009) ("Rule 26(e) is not[] . . . a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report."). Consequently, "[i]f an expert's report does not rely on any information that was previously unknown or unavailable to him, it is not an appropriate supplemental report under Rule 26." *Cedar Petrochems.*, 769 F. Supp. 2d at 278

(internal quotation marks and alteration omitted); *see also MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 572 (S.D.N.Y. 2017) (striking a supplemental expert report which included "additional analysis of trading data of European sovereign debt instruments that was available to him prior to submitting his initial expert report.").

In this case, the SEC supplemented Mr. Regard's First Report because his additional analysis in May 2017 rendered the First Report incomplete. As explained in his Supplemental Expert Report, Mr. Regard conducted a supplemental analysis using forensic tools that were allegedly not available to him when he produced his First Report in November 2014. In performing this supplemental analysis in May 2017, he discovered evidence that he had previously not detected with regard to Defendant McGinnis's alleged use of a master-key password and access to MNPI on two of the work computers he used.

Defendants point out that this previously undetected evidence detailed in the Supplemental Expert Report was available to Mr. Regard when he submitted the First Report in November 2014, and that, therefore, any advances in forensic technology were not necessary for Mr. Regard to perform his supplemental analysis. The court agrees. It remains true, however, that Mr. Regard did not know of the existence of this additional evidence until he performed a supplemental forensic analysis in May 2017. Once Mr. Regard became aware of additional evidence, he supplemented his findings, which the SEC disclosed to Defendants on July 3, 2017 pursuant to its duty under Rule 26(e). As the court extended the deadline for "any supplemental expert report(s) [to] July 3, 2017[,]" (Doc. 414 at 6.), Mr. Regard's Supplemental Expert Report was timely.

Even if Mr. Regard's Supplemental Expert Report was untimely, exclusion of it is not warranted. The Federal Rules of Civil Procedure allow a court to impose sanctions if a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Such sanctions may include "striking pleadings in whole or in part[.]" *Id.* at 37(b)(2)(A)(iii). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that

8

information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"The purpose of Rule 37(c)(1) is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Levinson*, 2013 WL 3280013, at *5 (internal quotation marks omitted) (citing *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)). "However, preclusion of an expert report can be a harsh sanction." *Cedar Petrochems.*, 769 F. Supp. 2d at 278 (internal quotation marks omitted); *see also In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 374 (5th Cir. 2016) (finding the exclusion of "critical expert testimony was disproportionally harsh for what amounts to failure to request an extension of the expert disclosure deadline.").

In assessing whether to exclude an untimely or improperly supplemented expert witness report, courts in the Second Circuit consider the following factors:

> (1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (internal quotation marks omitted) (citing *Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006)). "Before the extreme sanction of preclusion may be used by the district court, [the court] should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988).

Assuming *arguendo* that Mr. Regard's Supplemental Expert Report could have been provided at the time of his First Report, the SEC has provided an adequate, good faith explanation for its belated disclosure. They cite the stay in this case and the decision not to seek additional funds for Mr. Regard's work until the stay was lifted. The first factor thus weighs against striking the Supplemental Expert Report.

The second factor considers "the importance of the testimony of the precluded witness[.]" *Design Strategy*, 469 F.3d at 296. Defendants argue that the "incremental

9

value of [Mr.] Regard's new conclusions in the [Supplemental Expert Report] based on data that [he] examined once, and found to be immaterial, suggests that the evidence is of little import to the SEC." (Doc. 421-2 at 22.) In contrast, the SEC asserts that the Supplemental Expert Report is "pivotal to [their] case" as it purportedly demonstrates that Defendant McGinnis "not only used a master-key password to access [MNPI] on one computer he used, . . . but also did so on another computer, his assigned work laptop." (Doc. 428 at 7.) The evidence also purportedly dates back further in time than the other forensic evidence previously found by Mr. Regard. Courts are reluctant to exclude relevant evidence if it is critical to a party's case. *See, e.g., Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213 (2d Cir. 2009) (finding the trial court abused its discretion in excluding expert opinion for noncompliance with a pretrial order where, among other things, "the testimony of [the excluded expert] was critical to Hornbeck's defense on the issue of causation."); *Lab Crafters, Inc. v. Flow Safe, Inc.*, 2007 WL 7034303, at *7 (E.D.N.Y. Oct. 26, 2007) (noting that because the expert testimony was of "grave importance to defendant's case[,]" it "warrant[ed] admission under this factor of the test"). Because the Supplemental Expert Report allegedly provides additional evidence regarding when and how Defendant McGinnis accessed MNPI, the second factor weighs in favor of the SEC.

"The touchstone for determining whether to exclude an untimely expert report is whether the party opposing [its] admission is prejudiced." *Lore v. City of Syracuse*, 2005 WL 3095506, at *4 (N.D.N.Y. Nov. 17, 2005). Somewhat at odds with their contention that the Supplemental Expert Report is of "little import" to the case, Defendants assert that the Supplemental Expert Report "identifies new categories and evidence and theories that [Mr.] Regard claims bear on [Defendant] McGinnis's alleged possession of [MNPI] that the SEC has not previously identified in the four years this action has been pending[,]" (Doc. 421-2 at 22), and presents "an entirely new theory regarding [Defendant] McGinnis'[s] alleged possession of MNPI that the SEC failed to disclose at any time prior to the submission of the [Supplemental Expert Report]." *Id.* at 19-20.

Defendants' argument, however, inaccurately represents Mr. Regard's findings. The Supplemental Expert Report provides additional evidence, not a new theory of liability, with regard to how Defendant McGinnis accessed MNPI. Assuming that this additional evidence should have been included in the First Report, "there is no prejudice to [Defendants] by permitting [the SEC's] expert[] to serve" the Supplemental Expert Report because Defendants can depose him on or before July 13, 2018 pursuant to the Scheduling Order. *S.W. v. City of New York*, 2011 WL 3038776, at *4 (E.D.N.Y. July 25, 2011); *see also RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2002 WL 31780188, at *4 (S.D.N.Y. Dec. 11, 2002) ("[A]ny prejudice is easily cured by allowing plaintiff to depose [the expert] if [it] so desire[s]."). Indeed, Defendants have had the advantage of possessing the Supplemental Expert Report for almost a full year before the deposition deadline. As they have not yet produced an expert report of their own and can address the Supplemental Expert Report in their disclosure, the third factor therefore weighs heavily against striking the Supplemental Expert Report.

For similar reasons, the fourth factor also weighs in favor of the SEC. No continuance is necessary in this case because no trial date has been set and fact discovery has not yet closed. Pursuant to the Scheduling Order, Defendants have ample time to address the Supplemental Expert Report by deposing Mr. Regard or producing their own expert report, if necessary.

On balance, even if the Supplemental Expert Report is not a proper supplementation under Rule 26(e), the four factors weigh against granting Defendants' motion to strike. The SEC's disclosure of the Supplemental Expert Report is therefore "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1).

## CONCLUSION

For the foregoing reasons, Defendants' motion to strike the July 3, 2017 Supplemental Expert Report of Daniel L. Regard II is DENIED. (Doc. 421.)
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 3rd day of April, 2018.

Christina Reiss, District Judge
United States District Court