UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

---------------------------------------------------------X
SECURITIES AND EXCHANGE :
COMMISSION, :
: 5:14-cv-0006-CR
Plaintiff, :
:
v. :
:
CHAD C. McGINNIS, SERGEY :
PUGACH and JANUSZ SUCHOWIEJKO :
:
Defendants, and :
:
BELLA PUGACH, :
:
Relief Defendant :
---------------------------------------------------------X    March 20, 2019

## DEFENDANT CHAD C. MCGINNIS' MOTION TO STRIKE ALL TESTIMONY OF DANIEL L. REGARD

PRIMMER PIPER EGGLESTON & CRAMER PC
30 Main Street, Suite 500
P.O. Box 1489
Burlington, VT 05402-1489

FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, CT 06901-2689

**Attorneys for Defendant Chad C. McGinnis**

Defendant Chad C. McGinnis respectfully submits this motion to strike all testimony of Plaintiff SEC's computer forensics expert, Daniel L. Regard.

**ARGUMENT**

The testimony of the SEC's computer forensics expert, Daniel L. Regard, should be stricken in its entirety because it is false and misleading. Controlling Second Circuit precedent permits the Court, in the exercise of its discretion, to strike the false and misleading trial testimony of an expert under *Daubert v. Merrell-Dow Pharmaceuticals*, 509 U.S. 579 (1993).

During direct examination, Mr. Regard testified that the LNK artifacts reflected on his trial demonstrative slides 20-23 represented "matches" with GMCR documents across four specific fields of metadata: extension, size, date, and time. The "time" field was expressed to the hundredth of a second. Curiously, every time shown on the slides ended with the digits "00," suggesting that the time on the LNK files matched the time on the corresponding GMCR file to the hundredth of a second. The time expressed for the LNK files in these four examples was expressed as "LNK written," suggesting that this was the time the LNK file was created and that this time matched the time the corresponding GMCR file was created—again, to the hundredth of a second:

```
                                                         63

1    BY MR. BLISS:
2    Q    And just again to make sure this is clear, what is
3    the connection between the file on the USB drive and the
4    file on the Green Mountain path?
5    A    They have the same file name.  They have the same
6    file extension.  They have the same file size.  They
7    have the same last modified date and the last same
8    modified time.
```

March 15, 2019 Trial Tr. (afternoon) at 63:1-8.

In fact, the times GMCR provided Mr. Regard did not include the seconds at all. Mr. Regard's software too, in contrast, provided the times for the artifacts to the hundredth of a second. To create the illusion of a "match," Mr. Regard admitted, he appended two zeros (":00") to the end of each GMCR time and *doctored* the times spit out by the tool by lopping off the last two digits and replacing them with two zeros (":00"). This was no typo. When asked about this apparent anomaly on cross-examination, Mr. Regard admitted that *he knowingly truncated the zeros from the LNK files* and further admitted that this undermines the reliability of his analysis:

```
 6    Q    And, in fact, you know, because you have used LNK
 7    Parser before, that the LNK Parser gives you seconds to
 8    the hundredth of a second; isn't that true?
 9    A    It does provide the seconds, yes.
10    Q    Would it be helpful if I showed you the directions
11    from the TZWorks user manual or do you know for
12    certainty that it does give you the seconds?
13    A    I know that the timestamp contains a greater
14    precision than just the minutes.
15    Q    But for some reason when you prepared your report,
16    you and your team cut off the seconds, didn't you?
17    A    Yes, sir.
```

\* \* \*

```
21   Q    Well, if the seconds don't match, then you can't
22        say that it's -- the comparison, that it's an actual,
23        reliable match; isn't that true?
24   A    That would be true, yes.
```

March 18, 2019 Trial Tr. (morning) at 35:10-17; 35:21-24.

Last year, the Second Circuit affirmed a district court's exclusion of similarly false and misleading expert trial testimony in *Munn v. Hotchkiss School*, 724 F. App'x 25 (2d Cir. 2018). *Munn* involved an expert (Fluharty) who, like Mr. Regard, "fabricated the supposed support for his opinion testimony"—in part, by misrepresenting that data gathered from one source had in fact come from another. *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 203, 206 (D. Conn. 2014). In a written decision denying a motion for judgment as a matter of law or for a new trial, the court explained: "Rule 702 empowers me to admit expert testimony only so long as it is reliable. I can think of no stronger basis for excluding testimony than proof that the testimony lacks any basis in fact." *Id.* at 207. The Second Circuit affirmed. Fluharty's testimony, the Second Circuit concluded, "was at best confused and at worst misleading . . . ." *Munn*, 724 F. App'x at 28.

Regard's testimony should be stricken on the same basis here. It is simply not true that the times of the artifacts Mr. Regard recovered "match" the times of the GMCR files to which he compared them. First, Mr. Regard attempts to pass off the time the underlying document was created on GMCR's system—the target creation date, which Mr. Regard calls "GMCR Written"—as the time a LNK file was saved on a USB drive, which Mr. Regard calls the "LNK Written" time. As he conceded on cross-examination, however, the time the USB artifact showed up was "often *weeks* after the time" listed in his report. March 18, 2019 Trial Tr.

3

(morning) at 41:15-17 (emphasis added). Stated simply, this is an "apples and oranges" comparison. *See Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202 (2d Cir. 1984) (upholding exclusion of damages expert offering "apples and oranges" comparison). Mr. Regard further attempts to conflate these very different artifacts by manipulating them—replacing the real LNK artifact times with doctored ones and adding zeros to the GMCR times.

In addition to altering the artifacts he extracted, Mr. Regard also intentionally presented misleading demonstrative slides to the jury. During his testimony regarding the LNK files, Mr. Regard indicated that the LNK files appeared on GMCR36152 "On or after" a particular date— using the date that the USB drive had first been connected to the computer. This testimony was misleading because, as Mr. Regard acknowledged on cross-examination, he knew precisely what date the LNK files appeared on GMCR36152 and those dates were days (if not weeks) after the "On or after" date Mr. Regard identified. This misleading testimony also appears to have been intentional, as certain of the LNK files appeared *after* any of the alleged improper trading in this case, yet Mr. Regard reported them as having appeared "On or after" a day that predated certain trades. As Mr. Regard testified, he knew precisely the date and the time that the LNK files were reported to have appeared on GMCR36152 and intentionally chose to mislead the jury into thinking that they could have appeared at some earlier date.

Mr. Regard's testimony was also unreliable and misleading based on his purported typos in certain of his slides. In the slides discussing the artifacts Mr. Regard identified from the migration log, he indicated on his demonstratives and in his testimony that the migration took place on November 11, 2011. During cross-examination he admitted this error and agreed that

4

he had previously reported that the migration took place on November 21, 2011.  While such a typo (giving Mr. Regard all benefit of the doubt) may seem innocuous on its face, in a case where the timing of trades and the release of information to the public is of the utmost importance, Mr. Regard's persistent errors, which result from a lack of any sort of validation or proofing, raise significant issues.  That 10 day difference is potentially very important because the incorrect date that Mr. Regard testified to (November 11, 2011) is only two days after one of the events at issue in this case.  The date that Mr. Regard actually identified in his report, however, is 12 days after the event at issue.  Any information that would have been represented by the artifacts identified by Mr. Regard very well could have been or become public information in those 10 days.  In a case that is entirely dependent on *when* Mr. McGinnis is alleged to have possessed MNPI, Mr. Regard's stunning indifference to precision and simple verification renders his entire testimony unreliable and it should be stricken.

      Such imprecise, incorrect and intentionally misleading expert testimony has no place in the jury room.  The Court should exercise its discretion and follow Second Circuit precedent and exclude Mr. Regard's testimony here.

DEFENDANT
CHAD C. MCGINNIS

By: /s/ Kevin M. Henry
    Kevin M. Henry
    PRIMMER PIPER EGGLESTON & CRAMER
    300 Main Street, Suite 500
    P.O. Box 1489
    Burlington, VT 05402-1489
    Tel: (802) 864-0880
    Email: khenry@primmer.com

    Michael Q. English
    Evan I. Cohen
    Benjamin M. Arrow
    FINN DIXON & HERLING LLP
    Six Landmark Square
    Stamford, CT  06901-2704
    Tel: (203) 325-5000
    Fax: (203) 325-5001
    Email:   menglish@fdh.com
             ecohen@fdh.com
             barrow@fdh.com